E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JEREMY K. BEECHER (Cal. Bar No. 301272)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5429
     Facsimile: (213) 894-0141
     E-mail:    jeremy.beecher@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:23-153-DSF |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION |
| v. | Hearing Date: August 28, 2023 |
| ADRIAN DORIN CORCHES, aka Torsten Lund, | Hearing Time: 8:30 a.m. Location: Courtroom of the Hon. Dale S. Fischer |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Jeremy K. Beecher, hereby files its sentencing position regarding defendant ADRIAN DORIN CORCHES.

///

///

///

///

///

The government's sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report and Sentencing Recommendation, and any other evidence or argument that the Court may permit.

Dated: August 7, 2023        Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

   /s/
JEREMY K. BEECHER
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Defendant traveled to the United States to commit fraud. Shortly after defendant illegally entered the country via jet ski, law enforcement arrested him at a U.S. Bank ATM in Los Angeles after he fraudulently withdrew $4,970 in funds from Electronic Benefit Transfer ("EBT") accounts belonging to low-income Californians. For this, the government respectfully recommends that the Court sentence defendant to: 12 months' imprisonment; a five-year term of supervised release; $4,970 in restitution; a fine of $438.53; and the mandatory $200 special assessment.

**II. PROBATION'S RECOMMENDATION**

On May 22, 2023, defendant pled guilty to one count of bank fraud in violation of 18 U.S.C. § 1344(2) (Count 4) and one count of unlawful use of unauthorized access devices in violation of 18 U.S.C. § 1029(a)(2) (Count 6), pursuant to a plea agreement filed with the Court on May 2, 2023. (Dkt. 20 ("Plea Agreement").) In the Plea Agreement, defendant agreed that a high-end Guidelines sentence of no less than twelve months is appropriate. (Id. ¶ 17.)

The United States Probation & Pretrial Services Office ("USPO") issued a Presentence Investigation Report ("PSR") and accompanying Sentencing Recommendation on July 24, 2023. (Dtk. 26, PSR; Dkt. 25, Sentencing Recommendation.) The PSR matched the parties' agreement on an offense level of 10, and calculated a Criminal History Category of I, resulting in an advisory guideline range of 6 to 12 months. (PSR at 3.) The USPO recommended a high-end guidelines sentence of 12 months, consistent with the parties' agreement. (Sentencing Recommendation at 2; Plea Agreement ¶ 17.) The USPO further

recommended a three-year term of supervised release, a $200 mandatory special assessment and no fine.

The government does not object to the PSR's findings or to USPO's sentencing recommendation, except that the government believes the Court should impose a five-year period of supervised release and order defendant to pay a fine of $438.53, both of which defendant has agreed are appropriate here.  (Plea Agreement ¶ 17.)  For the reasons set forth below, the government requests that the Court sentence defendant to: a high-end Guidelines term of twelve months' imprisonment; a five-year term of supervised release; $4,970 in restitution; a fine of $438.53; and the mandatory $200 special assessment.

### III. STATEMENT OF FACTS

On March 1, 2023, law enforcement arrested defendant at a U.S. Bank ATM in Los Angeles after he made fraudulent withdrawals of cash from victims' EBT accounts.  Defendant was able to do so because he, himself or working in concert with others whose identities are unknown to the government, had obtained victims' EBT account information and PINs by placing "skimming" devices and cameras on ATMs or other point-of-sale devices to surreptitiously capture or record victims' account information and PINs.  Defendant, himself or working in concert with others unknown to the government, then "cloned" the account information captured by the skimming devices onto debit, credit or gift cards by altering the account information on those cards' magnetic stripes.  Defendant then utilized these cloned cards, together with the surreptitiously captured PINs, to withdraw funds from victims' EBT accounts.

On March 1, 2023, defendant withdrew a total of $4,970 in funds from victims' EBT accounts, consisting of: $1,130 from victim M.G.'s EBT account, which had a balance of $1,148.83; $1,130 from victim G.M.'s EBT account, which had a balance of $1,185.97; $1,590 from victim E.S.'s EBT account, which had a balance of $1,597.27; and $1,120 from victim A.Z.'s EBT account, which had a balance of $1,125.80. In total defendant obtained $4,970 in funds and intended to obtain $5,057.87 in funds from at least four victims. (The difference between the funds withdrawn by defendant and the intended loss represents the balance remaining on the accounts that defendant did not withdraw.)

When arrested, Defendant possessed four debit, credit or gift cards that had been cloned with victims' account information. All four cards had stickers on them bearing each victim's EBT account balance and PIN. Defendant used this information to make the four withdrawals.

Upon arrest, defendant falsely told arresting officers his name was Torsten Lund. Defendant also possessed a false Danish passport and identification card in the name of Torsten Lund. Defendant was carrying $5,608.53 in cash at the time of his arrest.

After his arrest, defendant submitted to an interview during which he acknowledged he knew he was withdrawing funds from EBT accounts that did not belong to him.

In the Plea Agreement, the government and defendant have agreed that the following represents an appropriate sentence: a custodial sentence no lower than the high-end of the Guidelines range calculated by the Court, provided that the resulting sentence is at least twelve months imprisonment; a five-year period of supervised

release with conditions to be fixed by the Court; $4,970 restitution; a fine of $438.53; and a $200 special assessment.

(Plea Agreement ¶¶ 13, 17; PSR ¶¶ 14-27.)

**IV. ARGUMENT**

The Court must impose a sentence that is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a). The Court shall consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). In addition, the Court should fashion a sentence that reflects the seriousness of the offense, promotes respect for the rule of law, provides just punishment for the offense, affords adequate deterrence to criminal conduct, and protects the public from future crimes of the defendant, among other considerations. 18 U.S.C. § 3553(a)(2). The parties' agreed-upon sentence will serve these goals.

  **A. Nature and Circumstances of the Offense**

The Court must consider the nature, circumstances, and seriousness of the offense. 18 U.S.C. §§ 3553(a)(1), (a)(2)(A). Here, the parties' agreed-upon high-end sentence reflects the seriousness of defendant's crime. Defendant traveled to the United States, illegally entering the country via a jet ski from Canada, for the apparent purpose of earning money by stealing public benefits. Defendant targeted the most indigent and financially vulnerable in our society – recipients of food stamps and related benefits for low-income Californians – for his own enrichment. By doing so, he deprived individual victims of funds they expected to receive and depended on to meet their basic needs.

The parties' agreed-upon, high-end recommendation reflects defendant's history and characteristics.  Defendant is a Romanian national with an extensive theft-related record across Europe.  His European criminal history includes sentences as follows:  four years' imprisonment for theft in Romania in 2002; an unknown term for theft in Norway in 2005; 19 months' imprisonment for aggravated theft in Romania in 2009; and 27 months' imprisonment for theft in Finland in 2014.  (See Declaration of Jeremy K. Beecher, Exhibit A.)  This record shows that defendant's conduct here is no aberration.  Indeed, defendant would fall within Criminal History Category III if his European convictions were domestic.  A high-end guidelines sentence will account for defendant's international history of theft-related offenses, which is otherwise not reflected under the Guidelines.

### B.   Need for Deterrence and to Promote Respect for the Law

A high-end, twelve-month sentence is also warranted to promote deterrence against individuals traveling to the United States to engage in fraud.  Defendant traveled to this country from Romania, entering without authorization from Canada, for the apparent purpose of participating in a sophisticated and organized scheme to steal public funds intended for indigent Californians.  A high-end custodial sentence is necessary to impart the seriousness of the offense to defendant, to others similarly situated to him considering a similar course of conduct, and to the general public.

### C.   Need to Avoid Unwarranted Disparities

Section 3553(a)(6) requires the Court to minimize sentencing disparities among similarly situated defendants.  One way of doing so is to correctly calculate the Guidelines range and then sentence defendants within that range.  See United States v. Treadwell, 593

F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges."). The parties' agreed-upon sentence falls within the Guidelines and thus avoids an unwarranted disparity with similarly situated defendants.

### D. Defendant Should Serve Five Years of Supervised Release

In addition to a high-end custodial sentence, the Court should impose the parties' agreed-upon five-year term of supervised release. (Plea Agreement ¶ 17.)

A five-year term of supervised release would provide an "added measure of deterrence and protection" that is warranted under the facts of this case. See USSG § 5D1.1, comment. (n.5). Defendant's history of theft across multiple decades and continents cries out for the additional deterrence and protection a high-end term of supervised release will provide. See USSG § 5D1.1, comment. (n.3(A), (B)) (noting factors to be considered in determining whether to impose a term of supervised release and stating that "[t]he court should give particular consideration to the defendant's criminal history (which is one aspect of the 'history and characteristics of the defendant'"). Additionally, given defendant's immigration status, he is likely to be deported at the conclusion of his sentence. There would be no greater deprivation of liberty than necessary, and no undue expenditure of Probation Office resources, because there would be no reporting requirement for defendant unless

he actually returned, presumably illegally, to the United States once again.

A five-year term of supervised release is thus appropriate to effectively protect the public from any of defendant's future crimes.

### E. Defendant Should Pay $4,970 in Restitution and a Fine of $438.53

In the plea agreement, defendant agreed to make full restitution in the amount of $4,970. (Plea Agreement ¶ 17.) The USPO agrees that this restitution figure is appropriate and should be paid to the California Department of Social Services, as the individual victims have since been made whole by that agency. (Sentencing Recommendation at 1.)

The government additionally requests that the Court impose the parties' agreed-upon fine of $438.53. (Plea Agreement ¶ 17.) This figure represents the balance of funds seized from defendant at the time of his arrest, after subtracting restitution and the $200 mandatory special assessment. Because the funds were seized from defendant upon his arrest and are currently in the custody of the United States Secret Service, he is indisputably able to pay the fine. While this fine amount is low in the abstract, its imposition will ensure that all of defendant's ill-gotten gains are forfeited here and that he does not realize a single cent of profit from his scheme to steal from the poorest Californians.

## V. CONCLUSION

For the foregoing reasons, the government respectfully recommends that the Court sentence defendant to a high-end Guidelines term of imprisonment of twelve months; a five-year term of supervised release; $4,970 restitution; a fine of $438.53; and the mandatory

1  $200 special assessment.  This sentence is "sufficient, but not
2  greater than necessary, to comply with the purposes enumerated in 18
3  U.S.C. § 3553(a)(2)."  18 U.S.C. § 3553(a).
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF JEREMY K. BEECHER

I, Jeremy K. Beecher, declare as follows:

1. I am the Assistant United States Attorney assigned to this case. I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness.

2. Attached hereto as Exhibit A is a true and correct[1] copy of correspondence received on the date of defendant's arrest setting forth his European criminal history. This correspondence was generated by a United States Secret Service investigative specialist based in Bucharest, Romania. This correspondence was provided to defense counsel during discovery.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on August 7, 2023.

/s/
_____
Jeremy K. Beecher

---

[1] Defendant's and government agents' personal identifying information has been redacted to permit filing on the public docket.